UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILLIP LEE BOYER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C18-5263 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the ALJ erred by rejecting his and lay witnesses' testimony and an examining doctor's opinions, and failing to account for all his limitations. Dkt. 15. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 50 years old, has a high school education, and has worked as an animal care attendant and a seafood laborer. Administrative Transcript (Tr.) 34. In January 2014 plaintiff applied for benefits, alleging disability as of April 2011. Tr. 77. Plaintiff's application was denied initially and on reconsideration. Tr. 89, 103. After the ALJ conducted a hearing in November 2016, the ALJ issued a decision finding plaintiff not disabled. Tr. 48, 18-

35.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the January 2014 application date.

**Step two:** Plaintiff has the following severe impairments: a neurocognitive disorder, personality change secondary to brain injury, an anxiety disorder, depression, an avoidant personality disorder, and kyphosis.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform medium work, lifting, carrying, pushing or pulling 50 pounds occasionally and 25 pounds frequently, sitting six hours per day, and standing and walking six hours per day. He is limited to simple, routine, repetitive tasks, simple work-related decisions, and superficial contact with coworkers and the public. Superficial contact is defined as being able to pass people in the hallways, but not being required to interact with coworkers or the public as part of his daily job requirements. Any task must be able to be completed independently without the need for coordinated effort from coworkers.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, he is not disabled.

Tr. 20-35. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

## DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

**A.    Examining Doctor Daryl Birney, Ph.D.**

An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if, as here, an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

In 2005, Dr. Birney opined that plaintiff "would likely not show up for work regularly." Tr. 773. He also opined that plaintiff would be unable to "[s]et realistic goals or make plans

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 3

independently of others." *Id.* The ALJ gave Dr. Birney's opinions "partial weight" because they were unsupported by the record and his own findings, and based instead on plaintiff's self-report. Tr. 31-32. The ALJ also discounted Dr. Birney's opinions because they were partly based on alcohol dependence with relapses, which no longer contributed to plaintiff's limitations. Tr. 32.

Plaintiff argues that the ALJ's findings regarding alcohol relapses are not supported by substantial evidence because Dr. Birney's report notes that plaintiff had two relapses in two years, while a more recent 2014 report notes that plaintiff relapsed once in the previous year. Tr. 763, 799. However, the 2014 report noted "one drink" while Dr. Birney's 2005 report noted that in his latest relapse plaintiff had "consumed a bottle of champagne." Tr. 799, 763. The 2014 medical opinion diagnosed alcohol use disorder "in sustained remission" while Dr. Birney diagnosed alcohol dependence "in sustained partial remission." Tr. 801, 764. The 2014 report noted 11 years of sobriety while Dr. Birney's report was based on only two years of sobriety. Tr. 798-99, 763. It was reasonable for the ALJ to find that a relapse of one drink, with an 11-year track record of sobriety, is different from relapsing by consuming an entire bottle relatively early in plaintiff's recovery. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Dr. Birney wrote that plaintiff's alcohol dependence contributes to his limitations because he "may have [alcohol] relapses." Tr. 774. The ALJ therefore reasonably concluded that plaintiff's current limitations were less severe, because the relapses had diminished. The ALJ did not err by discounting Dr. Birney's opinions on the grounds of lessened alcohol dependence.

Incongruity between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035,

1041 (9th Cir. 2008). Dr. Birney found largely normal intelligence and memory; however, plaintiff completed the trails-making tests so slowly that it indicated "cognitive impairment." Tr. 764; Tr. 763. Mental status results were mixed, with abnormal mood and affect but full orientation and no delusions. Tr. 763. Plaintiff argues that Dr. Birney's opinions are adequately supported by his findings of flat affect, depressed mood, brief communication, "mildly defective" everyday judgment, marginal grooming, and cognitive impairment. Tr. 762-65. Dr. Birney's findings showed some normal and some abnormal results, and Dr. Birney used his professional expertise and judgment to interpret the findings into opined limitations. The ALJ is not equipped to substitute his judgment for Dr. Birney's in interpreting the mix of normal and abnormal results. *See Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL 7664487, at *6 (W.D. Wash. Dec. 21, 2016); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted). In particular, the ALJ's discounting Dr. Birney's opinions because he did "not reconcile the claimant's relatively normal cognitive testing" ignores both Dr. Birney's findings of cognitive impairment and the fact that some of plaintiff's non-cognitive results, such as mood and affect, were abnormal. Tr. 32; Tr. 763. The ALJ erred by discounting Dr. Birney's opinions as unsupported by his own findings.

The ALJ also erred by discounting Dr. Birney's opinions on the grounds that plaintiff's lack of mental health treatment contradicted the finding that his mood was depressed. *See* Tr. 32. While Dr. Birney observed that plaintiff appeared depressed, he reported that plaintiff

"denie[d] feeling depressed other than 'sometimes, for a day,' about every two weeks." Tr. 763. That plaintiff did not believe he suffered from depression explains why he did not seek treatment for it. "[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Warren E. Leavy, Hidden Depression, Chi. Trib., Feb. 1, 1996 at 7 (noting that nearly 17 million adult Americans suffer from depression in a given year and that two-thirds of them do not get treatment)).

The ALJ also erred by discounting Dr. Birney's opinions as heavily based on plaintiff's self-report. "[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.* While Dr. Birney of course reported plaintiff's statements, he also performed a clinical interview, mental status examination, and several cognitive tests. Tr. 762-71. As in *Buck*, Dr. Birney's "partial reliance on [plaintiff's] self-reported symptoms is thus not a reason to reject his opinion." *Id.*

The errors are harmless, however, because the ALJ provided the specific and legitimate reason that plaintiff's alcohol dependence had decreased since Dr. Birney examined him. The Court concludes the ALJ did not err by discounting Dr. Birney's opinions.

**B.**     **Plaintiff's Testimony**

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678. At the 2016 hearing plaintiff testified that he has a "bad back curve" and "sitting for too long hurts [his] back." Tr. 69. In a 2014 function report plaintiff stated that, as a child, he suffered a near-fatal drowning, associated with convulsions, and had resulting brain damage. Tr. 257. Due to the brain damage, he has an "anger issue" and is "slow with everything" he does and often forgets things. Tr. 257, 259. He has difficulty understanding and remembering oral instructions. Tr. 262. He does not like people, "and usually avoid[s] them when [he] can." Tr. 294. The ALJ discounted plaintiff's testimony for a lack of supporting objective medical evidence, failure to seek treatment, and improvement after only minimal conservative treatment. Tr. 24-29. The ALJ also cited inconsistent statements, and activities that contradicted his testimony. Tr. 29-30.

An ALJ may reject a claimant's subjective symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).The ALJ cited "relatively normal" intelligence and memory testing results, and largely normal mental status examination results in 2014. Tr. 24-25 (citing Tr. 763-64). The memory results contradict plaintiff's reports that he often forgets things. This was a clear and convincing reason to discount plaintiff's testimony.

An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo*, 871 F.3d at 679-80. Here, plaintiff did not seek treatment for depression because he did not recognize he was depressed and, when taken to therapy as a teenager, he found it unhelpful. Tr. 763, 799. The ALJ did not address either

reason, and thereby erred.

The ALJ found that plaintiff's mental health symptoms improved significantly with only six weeks of therapy. Tr. 25. Impairments that can be effectively controlled by treatment are not considered disabling for purposes of Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). At his first appointment, on September 7, 2016, plaintiff reported "patterns of depression, anxiety and isolation that create distress." Tr. 841. At the latest appointment in the record, on October 18, 2016, plaintiff reported he had "been feeling less isolation and less emotional explosions." Tr. 834. This provides substantial evidence supporting the ALJ's finding that plaintiff's symptoms had improved since his 2014 function report describing anger issues and social withdrawal.

Inconsistent statements are a valid reason to discount a claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). At the 2016 hearing, plaintiff testified that he last used marijuana in 2005. Tr. 58-59. Yet, as the ALJ noted, this is contradicted by plaintiff's statements to doctors. Tr. 29. For example, in 2014, plaintiff told John Adler, Ph.D., that he "uses marijuana on a regular basis, 3-5 times per week, … last using six days ago." Tr. 799. The contradictory statements undermine plaintiff's credibility and were a valid reason to discount his testimony.

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. The ALJ found that plaintiff engaged in "a fairly wide range of independent activities of daily living that suggest a higher level of functioning than alleged." Tr. 30. But the activities the ALJ cites, such as household chores, making packaged food occasionally, playing video games, watching television, and shopping in stores, do not contradict plaintiff's testimony. Tr. 30. The

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 8

ALJ asserted that the video games plaintiff plays are "complex" and require "some" concentration and memory, but plaintiff never claimed he had no ability to concentrate or remember. Tr. 30; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits"). The ALJ notes that plaintiff "could go out in public when necessary[,]" but plaintiff never asserted his social problems kept him completely housebound. Tr. 30. The ALJ erred by discounting plaintiff's testimony based on his daily activities.

The inclusion of erroneous reasons was harmless, however, because the remaining reasons of contradictory statements, contradictory medical evidence, and improvement with treatment were clear and convincing. *See Carmickle*, 533 F.3d at 1163. The Court concludes the ALJ did not err by discounting plaintiff's testimony.

**C.     Lay Witness Statements**

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

**1.     Former Employer Wendy Pemberton**

Wendy Pemberton, who employed plaintiff part-time at a dog kennel until he was terminated in 2011, wrote in a 2016 statement that plaintiff could perform simple tasks but had great difficulty when he had to adapt to changing circumstances. Tr. 739. If a task "was out of sequence or if the pace caused him anxiety he had a very difficult time completing the task." *Id.* For example, plaintiff could clean kennels but, when it rained and the dogs had to be inside, plaintiff struggled to work around the dogs and failed to clean the kennels correctly. *Id.* She observed that "[w]hen he gets frustrated he has a difficult time controlling his temper…." *Id.*

The ALJ gave Ms. Pemberton's testimony "some weight, as Ms. Pemberton was able to observe

the claimant's work functioning at this job." Tr. 32. The ALJ provided two sentences that appear to be aimed at discounting Ms. Pemberton's statements, but neither gives a germane reason. First, the ALJ stated "this was only one job in 2011, and the claimant has had minimal opportunity to try different jobs…." Tr. 32. Trying different jobs is irrelevant to Ms. Pemberton's observation that plaintiff handled changing circumstances poorly. Second, the ALJ relied on plaintiff's testimony that he thought he could handle "the mental requirements for a job such as putting shoes in shoeboxes that were labeled by color and size…." Tr. 32 (citing Tr. 70). But plaintiff's speculation is not germane to Ms. Pemberton's observation of his real abilities, and the hypothetical job description did not include any changing circumstances. *See* Tr. 69-70. The Court concludes the ALJ did not provide a germane reason, and thus erred by discounting Ms. Pemberton's statements.

The error is harmless, however, because the ALJ accounted for Ms. Pemberton's statement in the RFC determination. The ALJ agreed with Ms. Pemberton that plaintiff could not perform his past work at the kennel. Tr. 33-34. The RFC limits plaintiff to "simple, routine, and repetitive tasks" and "simple work-related decisions…." Tr. 22. As described in Ms. Pemberton's statement, when plaintiff's job required more than routine tasks or simple decisions, his work suffered. Tr. 739. The RFC captures plaintiff's limitations as described by Ms. Pemberton. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (affirming decision where "ALJ incorporated [doctor's] observations into [claimant's] residual functional capacity").

**2.      Former Employer Steve Powell**

Mr. Powell wrote in a 2016 statement that plaintiff "was employed by our company and could not function in the work place environment. He does not have the social skills, the

physical stamina or coordination to be employed. He has anger issues that could cause legal problems for anyone who employs him." Tr. 325. The ALJ gave the statement "little weight" because it lacked examples or context and because the medical records provided evidence that plaintiff had the "social skills to interact with others and normal physical examination and coordination." Tr. 33. Lay witness testimony may not be rejected on the grounds that it lacks support from medical evidence, but it may be rejected if contradicted by medical and other evidence. *Diedrich*, 874 F.3d at 640; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, substantial evidence supports the ALJ's finding that medical evidence contradicted Mr. Powell's statements. After examining plaintiff in 2014, Joshua Knight, M.D., opined he could stand/walk eight hours a day and lift 25 pounds frequently. Tr. 797. The ALJ gave this opinion "great weight" and plaintiff does not challenge the ALJ's assessment. Tr. 31. Whether or not plaintiff had the stamina to perform the work Mr. Powell employed him for, the ALJ reasonably discounted his statement that plaintiff lacked the stamina for any employment at all. Even if the other reasons the ALJ provided were erroneous, any error is harmless because the ALJ provided at least one germane reason to discount Mr. Powell's statement. The Court concludes the ALJ did not err by giving Mr. Powell's statement little weight.

### 3. Division of Vocational Rehabilitation

Vocational rehabilitation counselor Lisa Oldham supported plaintiff's Social Security application because his long-term employment difficulty was "definitely related to his disabilities and health." Tr. 354. Ms. Oldham stated she was helping plaintiff find a job that would provide 15 to 25 hours of work per week. Tr. 354. The ALJ gave her opinion "little weight" because of a lack of objective support in DVR records or any explanation for why plaintiff could work 25 hours a week but not 40. Tr. 33, 29. Plaintiff argues that Ms. Oldham's

opinion is supported by Dr. Birney's medical opinions, but the ALJ reasonably discounted those. Dkt. 15 at 5-6. Plaintiff also argues that Ms. Oldham's opinion is supported by her knowledge of plaintiff's "traits" as a worker. Dkt. 15 at 6. However, lacking medical training, Ms. Oldham is not in a position to determine that these traits are due to his disabilities, or that his disabilities prevented plaintiff from working 40 hours a week. The Court concludes the ALJ did not err by discounting Ms. Oldham's opinion.

Vocational rehabilitation counselor Karen M. Heater certified plaintiff as disabled for purposes of receiving DVR services. Tr. 555. The ALJ discounted this opinion for purposes of the Social Security disability analysis because it was based on Dr. Birney's opinions, 2003 substance abuse treatment records, and 2009 diverticulitis treatment records. Tr. 33. The ALJ permissibly discounted Dr. Birney's opinions, as discussed above. The ALJ also found that substance abuse and diverticulitis were no longer severe impairments, and plaintiff does not challenge this finding. Tr. 20-21. The ALJ did not err in discounting Ms. Heater's opinion on the grounds that it relied on evidence that he permissibly rejected. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009) (affirming ALJ's rejection of a claimant's VA disability rating because the VA rating rested on medical opinions that were properly rejected by the ALJ).

**D.     Residual Functional Capacity Determination**

Plaintiff argues the ALJ erred by failing to include in the RFC limitations contained in opinions give great weight. Dkt. 15 at 2. The Court disagrees.

State agency nonexamining doctor Gerald L. Peterson, Ph.D., opined that plaintiff "should not be expected to set and meet his own goals. He is capable of meeting reasonable employer established goals." Tr. 86. On reconsideration, state agency nonexamining doctor Jan

1  L. Lewis, Ph.D., concurred. Tr. 100. The ALJ gave these opinions "great weight." Tr. 31.
2  Examining physician John Adler, Ph.D., opined that plaintiff's ability to "[c]op[e] with stress is
3  somewhat impaired…." Tr. 801. The ALJ gave Dr. Adler's opinions "significant weight." Tr.
4  31. In assessing plaintiff's RFC, the ALJ included a limitation to "simple, routine, and repetitive
5  tasks; simple work-related decisions; and superficial contact with coworkers and the public." Tr.
6  22.

7  An ALJ's assessment of a claimant's RFC will be upheld "where the assessment is
8  consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*,
9  539 F.3d 1169, 1174 (9th Cir. 2008). It is the ALJ's responsibility to translate medical testimony
10 into concrete limitations. *Id.* Plaintiff argues that a limitation to "low stress jobs" and a
11 limitation on the "ability to set realistic goals or make plans independently" should have been
12 included in the RFC. Dkt. 15 at 2. The ALJ accounted for plaintiff's reduced ability to cope
13 with stress and to set goals by limiting him to simple, routine, repetitive tasks and simple
14 decisions. Avoiding complex decisions and tasks, and reducing interactions with people, reduces
15 stress. Other features of a job or workplace may create stress, but Dr. Adler did not opine that
16 plaintiff could not deal with any stress at all. *See* Tr. 801. Performing simple, repetitive tasks set
17 by the employer does not require independent goal-setting, and making only simple decisions
18 further reduces the need to set goals or make plans. The RFC is consistent with the medical
19 testimony and thus must be upheld. *See Stubbs-Danielson*, 539 F.3d at 1174.

20 Plaintiff argues that this case resembles *Andrews*, where the ALJ failed to incorporate
21 into the RFC the claimant's limitations in the ability "to set realistic goals or make plans
22 independently of others." *Andrews*, 53 F.3d at 1044. However, unlike in this case, in *Andrews*
23 the RFC did not include limitations to simple, routine, repetitive tasks and simple decisions.

Plaintiff argues that this case also resembles *Bagby*, where the ALJ failed to address the claimant's limitations in the ability to "make judgments on complex work-related decisions." *Bagby v. Comm'r of Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015). But here, the ALJ included a limitation to only simple decisions.

The Court concludes the ALJ did not err in formulating the RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 30th day of November, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 14